DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Jesse L. Roberson has appealed from his convictions in the Summit County Court of Common Pleas of felonious assault and domestic violence. This Court affirms.
 I {¶ 2} On April 14, 2004, Appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree, and one count of domestic violence, in violation of R.C.2919.25(A), which due to a previous domestic violence conviction was indicted as a felony of the fifth degree. On April 28, 2004, as the Appellant "stood mute", the trial court entered not guilty pleas on Appellant's behalf.
 {¶ 3} On June 17, 2004 a jury trial commenced and Appellant was found guilty as charged in the indictment. The jury also found that Appellant had a previous domestic violence conviction. The trial court merged the domestic violence conviction with the felonious assault conviction and sentenced Appellant to four years incarceration.
 {¶ 4} Appellant has timely appealed his conviction, asserting three assignments of error. For ease of discussion, we have consolidated Appellant's assignments of error.
 II Assignment of Error Number One
"The conviction of the appellant for the charges of felonious assault and domestic violence in this case are against the manifest weight of the evidence and should be reversed."
 Assignment of Error Number Two
"The trial court incorrectly denied appellant's motion for acquittal in violation of [CRIM.R. 29]; specifically, there was not sufficient evidence to prove the offenses of felonious assault and domestic violence beyond a reasonable doubt."
 Assignment of Error Number Three
"The trial court erred to the prejudice of appellant and in violation of [CRIM.R. 29(A)], Article I, section 10 of the ohio constitution and
The fourteenth amendment to the constitution of the united states, when it denied appellant's motion for acquittal."
 {¶ 5} In his three assignments of error, Appellant has argued that there was insufficient evidence to convict him and that his convictions were against the manifest weight of the evidence. Specifically, Appellant has argued that the evidence presented by the State did not establish beyond a reasonable doubt that he committed the acts of felonious assault and domestic violence. We disagree.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks
(1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id, at paragraph two of the syllabus; see, also, Thompkins,78 Ohio St.3d at 386.
 {¶ 7} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted).
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 9} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 10} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another [.]"
 {¶ 11} Appellant was also convicted of domestic violence in violation of R.C. 2919.25(A), a felony of fifth degree. Pursuant to R.C. 2919.25(A), "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 12} During the trial, the State presented testimony from four witnesses. The State called the victim ("Victim"), as its first witness. Victim testified to the following. She had two children with Appellant and lived with him for a "couple of months." The two lived together on June 9, 2003 when Victim received a broken jaw. Victim didn't know how her jaw was broken, but she remembered fighting with a girl. Appellant was present during the fight.
 {¶ 13} After a brief sidebar discussion, the State resumed its inquiry and Victim continued her testimony. Victim contacted the Akron Police Department on June 9, 2003 and told them that Appellant had been hitting her because he was angry with her. Victim told the police that Appellant was angry with her because she would not give him her food card or bus pass. She told the police that Appellant hit her in the face, kicked her in the back, and scratched her arm. Victim never told the police about a woman being at the apartment and fighting with her. When Victim arrived at the hospital, she informed the medical staff that Appellant had hit her.
 {¶ 14} Victim continued her testimony, testifying to the following. Appellant had two prior domestic violence convictions for hitting her. Victim admitted completing a written report stating that Appellant caused her injuries on June 9, 2003. Victim identified two photographs showing injuries to her face, jaw, and arm. When asked if Appellant had caused those injuries, Victim responded, "No[.] * * * I made — I made all that up." Victim then retracted her written statement to the police that Appellant had caused her broken jaw and other injuries.
 {¶ 15} Victim admitted to maintaining contact with Appellant after June 9, 2003 while he was living in Alabama. She denied telling him there was a warrant for his arrest. Victim admitted writing letters to Appellant in jail. The following colloquy occurred when Victim was asked why she was writing Appellant:
"Victim: Because — [.]"
"The State: You want him back, don't you?"
"Victim: Yes."
"The State: And you don't want to see anything happen to him, do you?"
"Victim: No. But he did not do that. It was me and the girl he was sleeping with."
 {¶ 16} On cross-examination, Victim testified to the following. She was angry with Appellant because she was pregnant and he had another girlfriend. Victim realized how much of an "inconvenience" she had caused Appellant and that is why she told the "truth" to the jury. She was not forced to testify that Appellant did not break her jaw.
 {¶ 17} On re-direct examination, Victim testified to the following. It had been over a year since the incident and Victim had never mentioned to anyone that Appellant was not the person who broke her jaw. Victim had spoken with the prosecutor the previous day and when asked what happened on June 9, 2003, she responded that she didn't remember and she didn't tell the prosecutor that another girl caused the injuries because she "was scared."
 {¶ 18} The State then called Officer Alexander of the Akron Police Department ("APD") as its next witness. Officer Alexander testified to the following. On June 9, 2003 around 8:00 p.m., he received a dispatch call about a fight. Officer Alexander responded to an address on West Miller with his partner, Officer Corsello, and they found Victim at the scene. Victim informed the officers that she was involved in a fight in her apartment on Westerly with Appellant and he struck her and kicked her in the back. Officer Alexander observed a large scratch on Victim's upper left arm, a scratch on the left side of her face, and swelling on the left side of her face.
 {¶ 19} The following statement was read into the record by Officer Alexander from Victim's written statement:
"I was at home when [Appellant] came in and wanted my food and bus pass and my dad's cable card. So he started hit me and told he would kill me and my family if he go to jail. Then he left and went to his mom house (sic)."
A warrant was subsequently issued for Appellant's arrest and Victim was cooperative in filing the charges against Appellant. Officer Alexander could not recall Victim ever mentioning that another girl was involved in the incident.
 {¶ 20} On cross-examination, Officer Alexander testified that he did not speak to Appellant on June 9, 2003, and that he relied on Victim's statements and her injuries when he made his report.
 {¶ 21} On re-direct examination, Officer Alexander read portions of his police report. He read into the record that Victim and Appellant had one child together and that she was four-months pregnant with their second child. When Victim would not let Appellant take the items, he began hitting her. Victim's apartment did not have a phone so she went to her mother's house to call the police. Officer Alexander responded to Victim's mother's house. Officer Alexander believed the victim was telling the truth and had no reason to doubt her.
 {¶ 22} Officer Corsello of the APD testified next for the State and testified to the following. Officer Corsello was working with Officer Alexander when they received a dispatch call of a domestic fight. Officer Corsello reiterated Officer Alexander's testimony about Victim's injuries and her written statement. Victim never mentioned a woman causing her injuries. She told him her boyfriend caused the injuries and Officer Corsello had no reason to disbelieve her.
 {¶ 23} On cross-examination, Officer Corsello testified to the following. While Officer Corsello observed Victim's injuries, he was not able to tell whether a male or female caused them. He did not witness Appellant strike Victim. Appellant was charged based on the statements of Victim.
 {¶ 24} On re-direct examination, Officer Corsello testified to the following. On previous occasions he has had reason to believe that a person is not telling him the truth. He believed Victim was telling the truth. Officer Corsello was not able to interview Appellant about the incident. After the incident, Officer Corsello learned that Appellant had warrants for his arrest and he believed Appellant was eluding him.
 {¶ 25} On re-cross examination, Officer Corsello testified to the following. Other officers were looking for Appellant and could not locate him. Officer Corsello could not say that Appellant knew the police were looking for him.
 {¶ 26} Deputy Williamson of the Summit County Sheriff's Office testified next for the State. Deputy Williamson testified to the following. Appellant was arrested in Alabama on the warrant on the instant matter. Deputy Williamson transported Appellant from Alabama to Summit County.
 {¶ 27} At the close of the State's case, the following exhibits were admitted into evidence: two photographs showing Victim's injuries; Victim's victim statement form; four letters from Victim to Appellant; two Akron Municipal Court records; and Victim's emergency room records. After the exhibits were admitted, the State rested its case.
 {¶ 28} Appellant rested his case without presenting any evidence or witnesses.
 {¶ 29} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of felonious assault and domestic violence. The trial court was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The credible testimony of Officers Alexander and Corsello and Victim's original oral and written statements to the police and oral statements to the hospital staff established that Appellant committed the crimes as charged.
 {¶ 30} Based on the foregoing, this Court cannot find that Appellant's convictions were against the manifest weight of the evidence. Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency." Roberts, supra at 4. Accordingly, having found that Appellant's convictions were not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Thus, we find that the trial court did not err in denying Appellant's motion for acquittal. Appellant's three assignments of error are not well taken.
 III {¶ 31} Appellant's three assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Moore, J. Concur.